UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In the Matter of:

   Kenneth W. Paciocco                                                          MP No.: 15-00302-KRH

_____

### **MEMORANDUM OPINION**

Before the Court in this Miscellaneous Proceeding are orders on three motions for Kenneth W. Paciocco ("Paciocco") to show cause why he should not be sanctioned or suspended (the "Motions to Show Cause"). The Motions to Show Cause were filed by the Office of the U.S. Trustee against Paciocco and Keith H. Waldrop ("Waldrop") in three separate bankruptcy cases: *In re Shanika F. Booker* (Case No. 15-31946-KRH), *In re Diane H. Clemons* (Case No. 15-32694-KLP), and *In re Barbara D. Slater* (Case No. 15-31945-KLP). As the facts and issues presented in the three bankruptcy cases are similar, the Court decided to consolidate the show cause proceedings into this single Miscellaneous Proceeding and to hear these matters simultaneously.[1] Paciocco is currently serving a three-year suspension imposed by the Virginia State Bar, which commenced on September 15, 2014 (the "Suspension Order"). *Virginia State Bar ex. rel. Third District Committee v. Kenneth Wayne Paciocco*, Case No. 14-2668-6 (Va. Cir., Richmond, Oct. 20, 2014).

The Court entered orders on the Motions to Show Cause, setting a consolidated evidentiary hearing in this Miscellaneous Proceeding for July 15, 2015 (the "Hearing") to consider whether Paciocco's conduct in the underlying bankruptcy cases warrants the imposition

---

[1] Waldrop and the U.S. Trustee have now entered into an agreed disposition in Waldrop's case that the Court approved under Rule 9019 of the Federal Rules of Bankruptcy Procedure by order entered September 1, 2015. Accordingly, this Memorandum Opinion will not address allegations against Waldrop.

of sanctions or further suspension from practicing before this Court. At the conclusion of the Hearing, the Court took the matter under advisement and invited supplemental submissions by the parties. Paciocco filed a supplemental letter along with a number of attachments on July 21, 2015. The Court has taken Paciocco's submission into consideration in reaching its final decision in this matter. After considering all of the evidence presented at the Hearing, the applicable statutory authority and case law, the pleadings and the arguments of the parties, and Paciocco's supplemental submission, the Court finds that as a result of Paciocco's conduct, he should be permanently barred from practicing law before the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"). This memorandum opinion sets forth the Court's analysis and conclusions in support of that ruling in accordance with Bankruptcy Rule 7052.[2]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). "A federal court has an inherent power 'to control admission to its bar and to discipline attorneys who appear before it.'" *In re Parker*, No. 3:14cv241, 2014 WL 4809844, at *5 (E.D. Va. Sept. 26, 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). This inherent power extends to bankruptcy courts and "includes the power to suspend or disbar attorneys from practicing before the court." *Williams v. Lynch (In re Lewis)*, No. 14-1881, 2015 WL 3561277, at *2 (4th Cir. Jun. 9, 2015) (citing *In re Snyder*, 472 U.S. 634, 643,

---

[2] Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that Rule 7052 is applicable to this contested matter. *See* Fed. R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

2

105 S. Ct. 2874 (1985)). The Court imposes sanctions against Paciocco pursuant to this inherent power and the authority granted to it under 11 U.S.C. § 105(a).[3]

### Factual and Procedural Background

On August 29, 2014, a three-judge state court sitting by designation of the Supreme Court of Virginia conducted a hearing pursuant to Va. Code § 54.1-3935 to consider whether Paciocco had violated various of the Virginia Rules of Professional Conduct. Ultimately, the three-judge panel determined that Paciocco had violated Rules 1.4 (Communication), 1.15 (Safekeeping Funds), and 8.4 (Misconduct) of the Virginia Rules of Professional Conduct.[4] As a result of Paciocco's misconduct, the Virginia State Bar entered its Suspension Order suspending Paciocco's license to practice law for a period of three years beginning on September 15, 2014. *Virginia State Bar ex. rel. Third District Committee*, Case No. 14-2668-6, at 14–16.

Paciocco was a longstanding member of the bar of this Court, having been first admitted to practice on February 1, 1983.[5] Over the past thirty years, Paciocco developed a well-established bankruptcy practice. Throughout that time, Paciocco appeared regularly before the Court. The Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia require that attorneys must remain members in good standing of the bar of the

---

[3] Bankruptcy Code § 105 "gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel." *In re Ulmer*, 363 B.R. 777, 781 (Bankr. D.S.C. 2007) (citations omitted). Attorneys may be held liable for improper or unprofessional conduct in a case. *In re Johnson*, No. 07-33312, 2008 WL 183342, at *4-5 (Bankr. E.D. Va. Jan. 18, 2008); *see also In re Computer Dynamics, Inc.*, 252 B.R. 50, 64 (Bankr. E.D. Va. 1997), aff'd, 181 F.3d 87, 1999 WL 350943 (4th Cir. 1999).

[4] The Virginia Rules of Professional Conduct are the ethical standards governing the practice of law in this Court. Local Rule 2090-1(I). Lawyers are expected to adhere to recognized standards of professional conduct. *See In re Johnson*, 2008 WL 183342, at *4-5. Those Rules outline the *mandatory minimum* level of acceptable conduct for attorneys. *In re Soulisak*, 227 B.R. 77 (Bankr. E.D. Va. 1998); *Office of the United States Trustee v. Jones (In re Alvarado)*, 363 B.R. 484, 490 (Bankr. E.D. Va. 2007).

[5] Local Rule 2091-1(A) provides that attorneys admitted to practice before this Court comprise the Bar of the United States Bankruptcy Court for the Eastern District of Virginia.

Commonwealth of Virginia in order to maintain their right to practice before this Court. Local Rule 2090-1(B). Accordingly, upon entry of the Suspension Order by the Virginia State Bar, Paciocco lost his privilege to practice before this Court. All the facts at issue in the three underlying cases occurred after entry of the Suspension Order in Paciocco's state court disciplinary proceeding.

Waldrop testified at the Hearing that Paciocco approached him soon after entry of the Suspension Order to seek Waldrop's assistance in taking over and completing Paciocco's outstanding bankruptcy cases. While the two did not socialize frequently, Waldrop explained that he and Paciocco were friends, having known each other since law school. Accordingly, Waldrop was willing to help Paciocco even though Waldrop was not familiar with the practice of bankruptcy law or with the rules of the United States Bankruptcy Court. Paciocco was well aware of Waldrop's unfamiliarity with bankruptcy procedure, and he took full advantage of Waldrop's bankruptcy naivety.[6]

Paciocco's access to the Court's electronic filing case management system ("CM/ECF")[7] had been terminated upon issuance of the Suspension Order. Waldrop had never applied for CM/ECF training, as he did not practice bankruptcy law. So Waldrop did not have access to the Court's CM/ECF system, either. Paciocco assured Waldrop that this would not be a problem. Paciocco agreed to assist Waldrop with the pending cases and offered to obtain the necessary CM/ECF account for Waldrop. Paciocco did, in fact, obtain a CM/ECF identification number

---

[6] Bankruptcy is a highly technical practice that mandates particular expertise in order to adequately represent clients. Practitioners must remain constantly abreast of statutory changes and other developments in the laws and the rules of practice. For example, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 (BAPCPA) enacted a number of significant changes affecting individual bankruptcy cases. *In re Alvarado*, 363 B.R. at 489 n.12.

[7] All petitions, pleadings or other documents filed with the Court must be filed through the Court's Case Management/Electronic Case Files System (CM/ECF) as provided by the *Court's Electronic Case Files Policy* (CM/ECF Policy). *See* Local Rule 5005-2.

4

for Waldrop; however, Paciocco purposely neglected to deliver the CM/ECF information to Waldrop. Waldrop testified that he never used the identification number Paciocco obtained for him to file any documents with the Court. Waldrop never learned how to use the Court's CM/ECF system. Waldrop testified at the Hearing that he does not know what his CM/ECF identification number is. Paciocco remained in complete control of that number at all times. Paciocco used the identification number he had obtained for Waldrop in order to surreptitiously maintain his bankruptcy practice following the Suspension Order.

While the three underlying cases before the Court involve similar factual scenarios and display a consistent pattern of misconduct, the Court will, nevertheless, address the circumstances that occurred in each case separately.

*In re Shanika F. Booker (Case No. 15-31946-KRH)*

Shanika F. Booker ("Booker") filed a petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code")[8] in this Court on April 14, 2015 ("Booker's Petition Date"). Waldrop is listed on Booker's petition as counsel for the debtor and is counsel of record in the case. Waldrop, however, did not file Booker's bankruptcy petition. At the Hearing, Booker testified that she had sought out a bankruptcy attorney to help her file her case. To that end, Booker made a telephone call to Paciocco sometime during September 2014. Booker thereafter met with Paciocco four times prior to Booker's Petition Date. During Booker's meetings with Paciocco, Paciocco counseled Booker and assisted her in the preparation of her bankruptcy petition along with the schedules and statement of affairs annexed thereto. In February of 2015 Booker signed the bankruptcy petition and all of the accompanying documents in Paciocco's presence in the parking lot of Paciocco's law office. During this meeting,

---

[8] 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

5

Paciocco instructed Booker not to date her signature on the bankruptcy petition. Booker was then informed that Waldrop (whom Booker had never met) would file the case and appear at the § 341 meeting of creditors.[9]

Paciocco later dated Booker's signature on the bankruptcy petition as having been executed on April 15, 2015, instead of February, and he filed the petition using Waldrop's CM/ECF identification number. Booker never met with Waldrop prior to Booker's Petition Date. Booker testified that the first time she met Waldrop was at her § 341 meeting on May 11, 2015. Booker could not recall if Paciocco ever informed her that his license to practice law had been suspended. Booker did recall Paciocco stating during her fourth meeting with Paciocco that Waldrop would be her attorney in the case. Booker paid Paciocco $1,900 for her bankruptcy case. Approximately $1,600 of that amount represented fees in the case and $300 represented the costs of filing the petition. At no point did Booker make any payments to Waldrop.

*In re Barbara D. Slater (Case No. 15-31945-KLP)*

Barbara D. Slater ("Slater") also filed a petition under chapter 7 of the Bankruptcy Code in this Court on April 14, 2015 ("Slater's Petition Date"). Waldrop is listed on Slater's Petition as counsel for the debtor and is counsel of record in the case. Waldrop, however, did not file Slater's bankruptcy petition. At the Hearing, Slater testified that she had previously retained Paciocco in connection with a separate, prior bankruptcy case. When Slater began to consider the need for a second bankruptcy case, she again contacted Paciocco by calling the telephone number she had for Paciocco's law office. Slater and Paciocco met three times between February and April of 2015. These meetings took place at either Paciocco's law office or at St.

---

[9] The Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors. 11 U.S.C. § 341. The business of the meeting must include the examination of the debtor under oath. Fed. R. Bankr. P. 2003(b)(1).

6

Mary's Hospital, where Slater was employed. Slater gathered documents at the direction of Paciocco, and Paciocco used Slater's documents to prepare her bankruptcy petition, her schedules, and her statement of financial affairs. Paciocco filed Slater's bankruptcy petition using Waldrop's CM/ECF identification number. Slater testified that Paciocco did inform her at some point that his license had been suspended, but he assured Slater that he would still be involved in her case. Paciocco advised Slater that he was working with Waldrop. Slater never met with Waldrop prior to Slater's Petition Date. The first time that Slater met Waldrop was at her § 341 meeting of creditors. The debtor indicated that she paid approximately $1,600 for her bankruptcy case. She paid all but the final $200 of that amount to Paciocco.

*In re Diane H. Clemons (Case No. 15-32694-KLP)*

Diane H. Clemons ("Clemons") filed a petition under chapter 7 of the Bankruptcy Code in this Court on May 22, 2015 ("Clemons' Petition Date"). Waldrop is listed on Clemons' petition as counsel for the debtor. Waldrop, however, did not file Clemons' bankruptcy petition. Waldrop was counsel of record until July 10, 2015, when the Court entered an order permitting Clemons to substitute Harry Shaia, Jr. ("Shaia") as her counsel in the case.[10] At the Hearing, Clemons testified that she met with Paciocco three times prior to Clemons' Petition Date to gather information and to complete her schedules and statement of affairs. The first meeting took place in February or March of 2015, after Clemons' husband unexpectedly passed away. During this meeting Paciocco explained to Clemons the differences between cases filed under chapter 7 and chapter 13 of the Bankruptcy Code. He inquired about Clemons' financial affairs and assets and asked for Clemons to compile documents such as tax returns and bank statements for him to review. Clemons delivered the requested documents to Paciocco during the second

---

[10] Shaia is a well-respected bankruptcy lawyer with well over fifty years' experience. Shaia also serves a member of the Court's panel of standing chapter 7 trustees. Shaia's involvement in Clemons' bankruptcy case was essential in order to remedy a myriad of complications created by Paciocco and Waldrop.

7

meeting. At the final meeting Clemons reviewed the bankruptcy schedules and statement of financial affairs with Paciocco. Clemons then executed the bankruptcy documents that Paciocco had prepared for her. The debtor testified that Paciocco never informed her that his license had been suspended. Paciocco advised Clemons that he was getting ready to retire. On April 16, 2015, the debtor delivered a check in the amount of $1,695 to Paciocco in payment for her bankruptcy case. Paciocco requested that Clemons make the check payable to "cash." Thereafter, Paciocco filed Clemons' bankruptcy petition using Waldrop's CM/ECF identification number.

Clemons never met with Waldrop. Clemons spoke with Waldrop by telephone on June 19, 2015, after she learned that Waldrop, not Paciocco, would be representing her at the § 341 meeting of creditors. This was just three days prior to the scheduled date for her § 341 meeting of creditors. It was during this telephone conversation with Waldrop that Clemons learned that Paciocco's license to practice law had been suspended back in September of 2014. Clemons informed Waldrop that she did not want him to serve as her attorney in the case and that she would make other arrangements for legal representation. Clemons requested Waldrop to return to her the documents she had previously delivered to Paciocco and the bankruptcy papers she had signed.

At some point following the filing of the Motions to Show Cause in the Booker and Slater cases, Paciocco decided that it would be prudent to deliver to Waldrop the funds Clemons had paid to him. Issues had been raised at the Booker and Slater § 341 meetings concerning the accuracy of Waldrop's disclosure of compensation on Official Form B203 that Waldrop had found difficult to explain. It occurred to Paciocco that if the monies were washed through

Waldrop's trust account, then the disclosure form, while misleading, would technically be accurate (at least as far as the initial recipient was concerned).

After Waldrop's telephone conversation with Clemons, Paciocco asked Waldrop to return the monies that Clemons had paid. Waldrop thereupon consulted the Virginia State Bar. Heeding the advice he received from bar counsel, Waldrop declined to send the fees back to Paciocco and instead refunded the full amount paid to Clemons. Waldrop also returned to Clemons all of the documents he had received from Paciocco.

Until Waldrop received Clemons' phone call on June 19, 2015, Waldrop was not aware that Paciocco was continuing to file new bankruptcy cases. Waldrop was under the mistaken belief that he was just helping Paciocco wind down pending bankruptcy cases that Paciocco had commenced prior to the entry of the Suspension Order so that Paciocco's clients would not be left in the lurch. Waldrop testified that he never reviewed any of the bankruptcy cases that Paciocco filed using Waldrop's CM/ECF identification number prior to the date that they were filed. Waldrop did not authorize Paciocco to file any new cases under his name. There was additional evidence presented that Paciocco fabricated Waldrop's letterhead stationery in order to communicate with debtors. In one instance, after the Motions to Show Cause in the Booker and Slater cases had been filed, Paciocco held himself out as a paralegal working for Waldrop. Waldrop testified that he had never authorized Paciocco to use his letterhead stationery in any capacity. Waldrop also testified that he never employed Paciocco as a paralegal nor did he ever supervise Paciocco's work.

Each of the three debtors in the cases at bar was ignorant about the arrangement that existed between Waldrop and Paciocco. All three debtors testified that they did not understand what was happening in their cases. Clemons testified that she was shocked to learn that

Paciocco, the only person with whom she had ever met prior to commencing her bankruptcy case, was actually suspended from practicing law.  The Court finds that the three debtors were unsophisticated in matters pertaining to bankruptcy law.  As a result of their dire financial condition, the debtors were desperate to escape the stress that confronted them.  Each was particularly vulnerable and readily fell prey as an easy mark to Paciocco's manipulative deceit.

Paciocco did not file a response to any of the three Motions to Show Cause.  He did appear to defend himself at the Hearing, and he cross-examined all of the witnesses.  After the evidentiary Hearing had been concluded, Paciocco filed his supplemental submission.  Paciocco declined to testify as a witness and subject himself to cross-examination at the Hearing.

Paciocco made an oral motion for a continuance at the beginning of the Hearing.  Paciocco represented to the Court that he had not been provided with adequate notice of the Motions to Show Cause.  Paciocco complained that he had not received notice of the Motions to Show Cause until just before the Hearing Date in July.  Paciocco argued that a continuance was necessary so that he could seek discovery.  The Court found Paciocco's representations to be false.

The evidence shows that Paciocco sent an email transmittal to Waldrop on June 16, 2015, wherein he requested an opportunity to "take a look at the two case files (Booker and Slater) involving the show cause hearing that is scheduled in a couple of weeks in the Bankruptcy Court. Obviously, I need to prepare for those hearings." *See* Waldrop Exhibit 3.  The Court finds that Paciocco had actual notice of the Hearing Date by mid-June at the latest.  Paciocco did not seek any discovery in the ensuing month.  Nor did he file and serve a written motion for a continuance as required under the Rules of Court.  *See* Local Rule 9013-1(K).  All of the witnesses had been subpoenaed, were present in the courtroom, and had already missed time from work.

Furthermore, the Motions to Show Cause in the Booker and Slater cases were properly served on Paciocco in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure at Paciocco's business address on May 29, 2015.[11] The U.S. Trustee later filed and served its Motion in the Clemons case on July 9, 2015, and requested an expedited hearing so that the Clemons matter could be heard simultaneously with the Booker and Slater matters. Paciocco was served with the Motion in the Clemons case at both his home and business addresses under Rule 7004 of the Federal Rules of Bankruptcy Procedure. As the factual circumstances in the Clemons case are closely analogous to the facts in the Booker and Slater cases, the Court found that a continuance to seek discovery in the Clemons matter was not warranted. Therefore, the Court ruled at the Hearing that Paciocco had received sufficient notice of the Motions to Show Cause and denied Paciocco's oral motion for a continuance.

## Analysis

Paciocco claims that he was acting as a mere scrivener when he prepared the bankruptcy petitions for the three debtors. Section 110 of the Bankruptcy Code defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). A "document for filing" is a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." *Id.* § 110(a)(2). As Paciocco was no longer licensed to act as an attorney for the debtors, the work he performed for the debtors places him within the statutory definition of "petition preparer." As such, Paciocco was required to disclose his participation in the bankruptcy case, as well as to disclose his name and address on

---

[11] Each debtor testified at the Hearing that she met with Paciocco at his business address. Paciocco clearly was continuing to work from his law office.

every document he prepared. *Id.* § 110(b)(1), (c)(1). Paciocco failed to do so.[12] Paciocco was attempting to conceal his involvement in the three underlying cases, which is something the Bankruptcy Code does not permit.

Petition preparers are specifically prohibited from providing legal advice. *Id.* § 110(e)(2). Included within "legal advice" is guidance as to whether the debtor should file a petition under title 11 and, if so, under which chapter of the Bankruptcy Code the debtor should most appropriately proceed. *Id.* § 110(e)(2)(B)(i). Courts have recognized that petition preparers are permitted to offer little other than scrivener services. *See, e.g.*, *In re Jay*, 446 B.R. 227, 238 (Bankr. E.D. Va. 2010); *In re Evans*, 413 B.R. 315, 328–29 (Bankr. E.D. Va. 2009).

> When determining whether conduct constitutes the . . . practice of law, the court looks to state law. *Lucas v. Nickens, et al. (In re Lucas)*, 312 B.R. 559, 574 (Bankr. D. Md. 2004) (citing more than 10 cases holding the same). In Virginia, one is considered to be practicing law when "he furnishes another advice or service under circumstances which imply his possession and use of legal knowledge or skill." *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 34, 41 S.E.2d 720, 723 (1947). Specifically, the practice of law occurs whenever:
>
> (1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.
> (2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.
> (3) One undertakes, with or without compensation, to represent the interest of another before any tribunal.

*Jay*, 446 B.R. at 242 (*citing Commonwealth v. Jones & Robins, Inc.*, 41 S.E.2d at 720); *see Evans*, 413 B.R. at 325. In each of the three underlying cases at bar, the testimony is uncontroverted that Paciocco collected information and documentation from the debtors, explained the differences between the relief available under chapter 7 and chapter 13 of the

---

[12] Petition preparers are not permitted to "collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g).

12

Bankruptcy Code, provided the debtors with a pamphlet providing information on the bankruptcy process, and used the information obtained from the debtors to prepare bankruptcy petitions, schedules, statements of affairs, and other related documents required by Rule 1007 of the Federal Rules of Bankruptcy Procedure. As explained by the Court in *Soulisak*, providing debtors with this type of assistance in preparation of their schedules constitutes the practice of law. *Soulisak*, 227 B.R. at 80 ("[G]iving assistance to the general public in the completion of forms . . . or rendering legal advice concerning the completion of these forms constitutes the . . . practice of law."). Each of the debtors testified that Paciocco provided far more than mere scrivener services.

Paciocco also advised the debtors about the exemptions available to them and the manner in which they needed to assert those exemptions. Each of the debtors' Schedule C, Property Claimed as Exempt, contains citations to specific provisions of the Virginia Code that permitted the debtors to claim certain of their property as exempt.[13] For example, Paciocco protected money on deposit in Booker's SunTrust bank accounts from liquidation by the chapter 7 trustee by asserting a homestead exemption under Va. Code § 34-4.[14] Paciocco claimed similar exemptions for both Slater and Clemons.[15]

---

[13] Paciocco contends that because these cases are "no asset" cases it was not necessary for him to provide these debtors with any legal advice. The Court does not find that line of reasoning persuasive. These cases were classified as "no asset" cases only because each debtor was able, with Paciocco's assistance, to exempt all the scheduled property under Virginia law. Protecting these assets by identifying and then claiming exemptions constitutes legal advice.

[14] Presumably, Paciocco prepared a homestead deed for Booker's execution and had that deed recorded in the clerk's office of Henrico County in order to perfect the exemption claimed under this section of the Virginia Code, as anything less would have been malpractice.

[15] In addition, Paciocco claimed an automobile exemption for Slater under Va. Code § 34-26(8) and an IRA exemption for Clemons under Va. Code § 34-34.

"Numerous courts have held that the picking of exemptions for a debtor by a petition preparer is the unauthorized practice of law under various states' laws." *Evans*, 413 B.R. at 325 (citing *In re Rojero*, 399 B.R. 913, 920 (Bankr. D.N.M. 2008); *In re Springs*, 358 B.R. 236, 245 (Bankr. M.D.N.C. 2006); *In re Bush*, 275 B.R. 69, 83 (Bankr. D. Idaho 2002); *In re Dunkle*, 272 B.R. 450, 455–56 (Bankr. W.D. Pa. 2002); *In re Gomez*, 259 B.R. 379, 387 (Bankr. D. Colo. 2001); *In re Guttierez*, 248 B.R. 287, 296 (Bankr. W.D. Tex. 2000); *In re Farness*, 244 B.R. 464, 471 (Bankr. D. Idaho 2000); *In re Kaitangian*, 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998)). By selecting exemptions for each of these debtors, Paciocco exercised legal judgment and applied legal principles to the facts of each debtor's case.

This type of assistance constitutes the practice of law. The Court finds that Paciocco did provide legal advice to all three debtors. Relying upon the well-established bankruptcy practice he had developed over the years, Paciocco was continuing to provide bankruptcy legal services following the issuance of the Suspension Order.

Paciocco's misconduct extends well beyond practicing law while under the Suspension Order. Paciocco perpetrated a fraud upon the Court by systematically using Waldrop's CM/ECF account as his own in order to file documents in each of these underlying cases. The Court need only take judicial notice of its docket to discern that the three underlying cases were not the only cases that Paciocco commenced in this fashion. *See* Waldrop Exhibit 1.

Rule 5005(a)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires that a document filed by electronic means in compliance with a local rule constitutes a written paper for purposes of applying the Bankruptcy Rules. On March 14, 2008, the Court

14

adopted LBR 5005–2,[16] authorizing the Clerk of Court to promulgate and revise the Court's Electronic Case Files (CM/ECF) Policy. *See In re Smith*, Case No. 13-31565-KLP, 2014 WL 128385, at *4 (Bankr. E.D. Va. Jan. 14, 2014). The Court's CM/ECF Policy 2(D)(2) provides:

> Any password issued for the ECF System shall be used exclusively by the User to whom the password is assigned and any employee to whom proper authorization is given. A User will not knowingly permit a password to be used by anyone not so authorized. Use of a login and password constitute the official signature of the User on all documents filed.

Paciocco violated this policy provision. Paciocco used Waldrop's CM/ECF account to file petitions, mislead debtors, and conceal his illegal conduct from the Court. Paciocco did not have authorization from Waldrop to use Waldrop's CM/ECF account or password. Nevertheless, Paciocco attached Waldrop's signature to the three petitions he filed for the debtors in the underlying cases.[17] As the "[u]se of a login and password constitute[s] the official signature of the User on all documents filed," Paciocco forged Waldrop's signature on each of the petitions that Paciocco filed.[18] Such conduct is totally unbecoming of any member of the bar of this Court and simply will not be tolerated. *In re Wenk* at 725.

---

[16]  Rules 5005(a)(2), 9011 and 9029 of the Federal Rules of Bankruptcy Procedure authorize the Court to establish practices and procedures for the filing, signing, maintaining, and verification of pleadings and papers by electronic means.

[17]  The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
    (i)    performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
    (ii)    determined that the petition, pleading, or written motion—
        (I)    is well grounded in fact; and
        (II)    is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
11 U.S.C. § 707(b)(4)(C).

[18]  A case filed electronically is no different from a paper case filed in person at the counter of the Clerk's Office. *In re Wenk*, 296 B.R. 719, 724 (Bankr. E.D. Va. 2002). As such, the petition must comply with Local Rule 5005-1(C)(4) which requires that the petition be signed by counsel of record. *Id.* at 725.

But Paciocco's misconduct did not end here. Paciocco falsely reported the fees he received from the three debtors on official form B203 that he filed along with the debtors' bankruptcy petitions. Bankruptcy Code § 329 provides, in pertinent part, that an attorney representing a debtor must file with the Court a statement of compensation paid or agreed to be paid. 11 U.S.C § 329.[19] The Disclosure Statement filed in connection with Booker's bankruptcy case certified that $1,265 had been paid for "consultation concerning debt consolidation, relief under the bankruptcy law, or preparing the petition in bankruptcy." The Disclosure Statement filed in connection with Slater's bankruptcy case certified that $1,165 in fees had been paid for the same services. Paciocco misrepresented the amount each of these debtors had paid. He falsely disclosed that the misrepresented fee amount had been paid to Waldrop instead of to Paciocco. Paciocco also falsely certified that Paciocco, as the recipient of these fees, had "not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." Paciocco has never corrected the fraudulent disclosure nor has he offered any explanation for the misrepresentation to the Court.[20]

Congress implemented measures aimed at protecting debtors from falling victim to unscrupulous individuals, such as Paciocco, as part of its enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA added Bankruptcy Code § 526,

---

[19] Local Rule 2016-1 requires that an Attorney's Disclosure Statement be filed "irrespective of the amount of fees received or requested." The Disclosure Statement must be filed within 14 days of the petition date if not filed when the case is commenced. The certification must be filed in accordance with the Court's CM/ECF system requirements. Local Rule 2016-1(B).

[20] Counsel are required to file supplemental statements every 14 days for any payments received that were not previously disclosed. *See* Fed. R. Bankr. P. 2016(b).

16

which places certain restrictions on "debt relief agencies."[21] Subsection (c)(2) of § 526 of the Bankruptcy Code, provides:

> (2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have—
> (A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person;
> (B) provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document including those specified in section 521; or
> (C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

11 U.S.C. § 526(c)(2).

Paciocco's misconduct constitutes a clear violation of § 526(c)(2)(C) of the Bankruptcy Code. Paciocco intentionally and systematically violated material provisions of the Bankruptcy Code in utter disregard therefor. Paciocco prepared the petitions and schedules for the debtors without disclosing his involvement in the underlying cases, provided the debtors with legal advice while suspended from the practice of law, and filed pleadings and other documents with the Court by forging another lawyer's official electronic signature. Paciocco falsely represented to the Court that Waldrop was the attorney of record for the debtors in the three underlying cases when Paciocco knew Waldrop had never met with the debtors nor reviewed their petitions and schedules prior to the commencement of their cases. Paciocco filed documents in each of the underlying cases that he knew contained false and misleading information. Paciocco took

---

[21] The term "Debt Relief Agency" is defined as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110. . . ." 11 U.S.C. § 101(12A). Regardless of the capacity in which Paciocco claims to have been proceeding, the assistance that he provided to the debtors in the three underlying cases places him squarely within the ambit of § 526 of the Bankruptcy Code.

advantage of his many years of bankruptcy experience and Waldrop's unfamiliarity with the Court's CM/ECF system in implementation of a scheme to clandestinely circumvent the Suspension Order. While Waldrop may have been negligently complicit, he was not motivated by ill will, but rather by a misguided desire to help an old friend. On the other hand, the Court finds that Paciocco intentionally disregarded the material requirements of title 11 and engaged in a clear and consistent pattern of violating § 526 of the Bankruptcy Code. Section 526(c)(5) of the Bankruptcy Code allows a court to enforce the provisions of § 526.

> Bankruptcy Code § 526(c)(5) provides:
>
> (5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—
>     (A) enjoin the violation of such section; or
>     (B) impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5).

## Conclusion

After examination of the applicable statutory authority, case law, and factual scenarios, the Court finds that Paciocco has: engaged in the unauthorized practice of law; violated the Court's CM/ECF Policy; violated Bankruptcy Code § 110; violated Bankruptcy Code § 526; violated Bankruptcy Code § 707; and violated Bankruptcy Rule 9011. The Court finds Paciocco's disregard for the material requirements of the Bankruptcy Code was both calculated and systematic; and, therefore, it is incumbent upon the Court to protect the public in general and future prospective debtors in particular from the further likely recurrence of Paciocco's harmful conduct.

Using its equitable powers under Bankruptcy Code § 105 and the authority granted to it under Bankruptcy Code §§ 526(c)(5) and 707(b)(4), the Court imposes the following sanctions against Paciocco due to his transgressions and noncompliance with title 11.[22] First, Paciocco shall be permanently enjoined from practicing law before the United States Bankruptcy Court for the Eastern District of Virginia. Second, Paciocco shall be enjoined from working in a paralegal, secretarial, or other assistant capacity for any member of the Bar of this Court. Third, Paciocco shall be enjoined from working or otherwise providing services as a bankruptcy petition preparer. Fourth, Paciocco shall refund all monies paid to him by each of the debtors in the underlying cases. Based on the debtors' testimony, Booker shall be refunded an amount not less than $1,900; Slater shall be refunded an amount not less than $1,600; and Clemons shall be refunded an amount not less than $1,695. Fifth, Paciocco shall pay damages to Booker and Slater of $2,000 each to compensate them for the time they missed from work as a proximate result of Paciocco's misconduct. Additionally, Paciocco shall pay damages to Clemons of $2,000 for the time she missed from work plus $2,500 for the additional fees she was required to pay to Shaia in order to correct the deficiencies in her case, for a total of $4,500. Sixth, Paciocco shall pay a civil penalty to the Office of the United States Trustee in the amount of $10,000.

A separate order shall issue.

ENTERED: __September 3 2015__

                                                  /s/Kevin R. Huennekens
                                        UNITED STATES BANKRUPTCY JUDGE

---

[22] Additionally, Rule 9011(c)(2) of the Federal Rules of Bankruptcy Procedure gives the Court broad discretion in imposing sanctions.